W. W. WHITLOW *et al.*

*v.*

THE TRUSTEES OF SCHOOLS, etc.

*Opinion filed October 24, 1901.*

PUBLIC OFFICERS—*township treasurer should keep books to show condition of accounts.* A township treasurer should keep his books so as to show the exact condition of his accounts, and he has no right, in case of his defalcation, to require the township trustees to ascertain the amount due, and insist that they be bound by the amount which they agreed to accept, in the belief that it was correct, but which was afterward found to be too small, owing to misrepresentations by the treasurer as to certain credits claimed by him and allowed by the expert employed by the parties interested, including the trustees, on the faith of such representations.

*Whitlow* v. *Trustees of Schools,* 93 Ill. App. 664, affirmed.

WRIT OF ERROR to the Appellate Court for the Third District;—heard in that court on writ of error to the Circuit Court of Montgomery county; the Hon. SAMUEL L. DWIGHT, Judge, presiding.

ZINK, JETT & KINDER, and MILLER & MILLER, for plaintiffs in error.

LANE & COOPER, for defendants in error.

Mr. CHIEF JUSTICE WILKIN delivered the opinion of the court:

This action in debt was brought in the circuit court of Montgomery county by the trustees of schools in and for township 11, range 14, in that county, against W. W. Whitlow as principal and the other plaintiffs in error as his sureties on his official bond as township treasurer of said township for the term expiring April 4, 1898. The breach assigned in the declaration is the failure of the principal to pay over to his successor in office, C. H. Ball, the school funds of the township, amounting to $2000. On issue joined, a trial by the court without a jury re-

sulted in a judgment for plaintiffs for $1832.68 and costs. From that judgment an appeal to the Appellate Court for the Third District was prosecuted by the defendants, where the judgment of the circuit court was affirmed, and they now bring the cause here by writ of error.

It appears that Whitlow had been appointed treasurer of the township for several successive terms, and upon the appointment of his successor in April, 1898, he failed to pay over a large amount of the school funds of the township. Suit being threatened, the sureties upon the bond now in suit claimed that the defalcation occurred during the prior term, and that the sureties upon the bond for that term should be held responsible, and not they. All parties interested agreed that one H. H. Keithley should examine the books and accounts of Whitlow and report the total amount of his shortage. Keithley reported the amount to be $3182.46, and it was agreed by and between the sureties on this and the prior bond and the trustees, that the sureties should each severally pay an equal part of that sum, and that the trustees would receive the same in full of all Whitlow's defalcation. On January 4, 1899, the money was paid and a receipt given therefor, "in full of the shortage of William W. Whitlow, ex-school treasurer of said township," signed by the trustees. Subsequently it was ascertained, as claimed by the trustees, that there was a mistake in the report of Keithley, against the township, amounting to $1776.81, and that the total defalcation was $4959.27 instead of $3182.46, and they demanded of defendants payment of $1776.81 and interest, which being refused, they brought this suit. .

Plaintiffs in error insisted upon the trial and in the Appellate Court (and a very large part of their argument in this court is devoted to the same subject, in violation of our rules,) that the evidence failed to prove there was any mistake in the former settlement. Conceding that the evidence was conflicting upon that issue, which is the very most that can be claimed, it has been conclu-

sively settled to the contrary. In fact, any other finding would have been manifestly against the evidence. Whitlow himself does not claim that he paid to his successor this sum of $1776.81, or any part of it, but only that he had arranged with the bank in which he kept his accounts, to pay it for him, which it failed to do. Not only does the evidence clearly show the mistake, but it also shows that it resulted from Whitlow's own false representations. Keithley testified, referring to page 89 of the book: "Whitlow's term of office expired April, 1898, and Ball was appointed in his stead, and on this page I find credits as late as May 28, 1898. I asked Whitlow if he was entitled to these credits, and he said he was; that the book was balanced April 2, 1898. I told him he was mistaken. We had a dispute over it. He claimed it was not his handwriting—that it was similar and a clever forgery. I told him if he was entitled to the credits I would give them to him. I wanted him to bring in the vouchers, but he did not, so I could not verify the credit side. He said the vouchers were at home, and he admitted it was his handwriting, and I gave him credit for it. * * * The aggregate amount of these warrants is $1832.68. These warrants were included in the first computation from the fact I had nothing to verify the credit side of the books. He claimed credit and I allowed it to him. These stub-books were in the hands of the district clerks at that time. The second time I went over the accounts the district clerks were called in with their stub-books, reports and account books, and I compared them with Mr. Whitlow's and Mr. Ball's books."

The only question properly before this court is upon the assignment of error that the trial court erred in refusing to hold certain propositions submitted by the defendants as the law applicable to the case. Eleven of such propositions were presented to the judge and each refused. We shall not attempt to set them out at length. The scope and purport of each of them were, that plain-

tiffs should be concluded by the payment of the $3182.46. They proceed upon the theory that the settlement was the compromise of a doubtful claim between the township trustees and the treasurer, Whitlow. This is a suit upon the official bond of the township treasurer by the trustees of the township, acting for and on behalf of the public. They neither had the right nor did they attempt to compromise the breach of the bond. They could not give away the money of the township. (*Cumberland County* v. *Edwards,* 76 Ill. 544; *Kinney* v. *People,* 3 Scam. 357; *Washington County* v. *Parlier,* 5 Gilm. 232.) They simply sought to recover the amount due the township—no more and no less. It was not only the duty of the treasurer to safely keep and faithfully pay over to his successor all moneys in his hands belonging to the township, but he was also under bond to keep the books of his office so as to show the exact condition of his accounts. He had no right to call upon the trustees to hunt up and ascertain what amount he had failed to pay over. There was at the time of the settlement,—or, as counsel term it, "the accord and satisfaction,"—no dispute between the parties as to how much the treasurer should account for when that amount should be ascertained, and all that was sought to be done through Keithley was to ascertain and state that amount. It does not lie in the mouth of the defaulting officer to say that if the evidence of the facts was available to all parties at the time of the settlement the plaintiffs are bound by it.

If this had been a suit between individuals upon a mere matter of account or contract between them, some of the propositions submitted to the court would perhaps have been proper to be held; but as a statement of the law applicable to the facts of this case they are clearly erroneous.

The judgment of the Appellate Court is right and will be affirmed.

                                            *Judgment affirmed.*